PAUL. T. CULLEN, ESQ.
THE CULLEN LAW FIRM, APC
9800 Topanga Canyon Boulevard
Suite D, PMB 325
Chatsworth, CA  91311-4057
Telephone: (818) 360-2529
Facsimile   (866) 794-5741
Email: paul@cullenlegal.com

Attorneys for Plaintiff IA BROWN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IA BROWN. an individual, on behalf of herself, all others similarly situated, and the general public,<br><br>        Plaintiff,<br><br>        v.<br><br>AUDIOLOGY DISTRIBUTION, LLC, a Delaware limited liability company; CRAIG CAMERON, an individual; HEARX WEST, INC., A California corporation; STEVE MAHON, an individual; TINO SCHWEIGHOEFER, an individual; HEARX WEST LLC, a Delaware limited liability company; WS AUDIOLOGY (CALIFORNIA), PC, A California professional corporation; SIVANTOS, INC., a Delaware corporation; and DOES 1 to 100, inclusive,<br><br>        Defendants. | Case No. 2:22-cv-04271-DMG-MRW<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**<br><br>DATE:  July 12, 2024<br>TIME:  9:30 AM<br>LOCATION:  Courtroom 8C, 8th Floor<br><br>Case Filed:     June 22, 2022<br>Trial Date:     January 7, 2025 |

- 1 -

TO THE COURT, DEFENDANT, AND ITS COUNSEL OF RECORD, PLEASE TAKE NOTICE: on July 12, 2024 at 9:30 AM, in Courtroom 8C, 8th Floor of the United States Courthouse for the United States District Court for the Central District of California, located at 350 W. 1st St., Los Angeles, CA 90012, Plaintiff and proposed Class Representative, Ia Brown, will and hereby does move for an order of preliminary approval of a proposed class and collective action settlement, seeking the following:

Plaintiff will be requesting orders that do the following:

1. Preliminarily approve the proposed class and collective action settlement with Defendants Audiology Distribution, LLC, HearX West, Inc., and HearX West LLC herein, as set forth in the SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS (hereinafter the "Settlement Agreement" or "Agreement");

2. Certify for settlement purposes only the Federal Rule of Civil Procedure Rule 23 class described herein;

3. Approve the Fair Labor Standards Act ("FLSA") collective action settlement;

4. Appoint the Cullen Law Firm, APC as Class Counsel;

5. Appoint Ia Brown as the Class Representative;

6. Appoint CPT Group, Inc. as the Settlement Administrator;

7. Approve of and set the schedule for the dissemination of the Class Notice; and,

8. Schedule a final approval hearing date.

This motion is based on this notice of motion, the memorandum of points and authorities below, the declarations of Paul T. Cullen, Martha S. Doty, and Plaintiff Ia Brown, filed concurrently herewith, the exhibits attached thereto, the pleadings and

///

///

///

///

other papers filed in this action, and on any further oral or documentary evidence or argument that may be presented at the time of hearing.

Date:  June 12, 2024                    The Cullen Law Firm, APC

                                        By:    */s./ Paul T. Cullen*
                                        Paul T. Cullen, Attorneys for Plaintiff Ia Brown

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................1

I.     INTRODUCTION .........................................................................................1

II.    CLASS DEFINITIONS ................................................................................1

III.   CASE SUMMARY......................................................................................2

      A.     First Cause of Action - Overtime Wages outside California (FLSA) ...........3

      B.     Third Cause of Action - Overtime Wages inside California .........................4

      C.     Fifth Cause of Action - Wage Statement Violations ....................................5

      D.     Sixth Cause of Action - Waiting Time Penalties...........................................5

      E.     Seventh Cause of Action – Unfair Business Practices .................................5

      F.     Summary of Exposure in Comparison to Settlement Amount .....................6

IV.   SETTLEMENT TERMS AND EVALUATION..........................................6

V.    CLAIMS ADMINISTRATION ................................................................13

VI.   TYPICALITY, COMMONALITY AND ADEQUACY OF REPRESENTATION................................................................................13

      A.     Plaintiff is an Adequate Class Representative .............................................13

      B.     Plaintiff's Counsel is Adequate Class Counsel ..........................................15

VII.  COSTS AND FEES ...................................................................................15

      A.     Plaintiff's Litigation Costs Should be Reimbursed .................................15

      B.     The Fees Sought by Plaintiff's Counsel Are Reasonable...........................15

            1.     The Percentage of the Fund Method Supports the Fee Request.......15

            2.     Results Obtained Strongly Support the Fee Request.......................17

            3.     Additional Factors Support the Fee Award ...................................18

      C.     Service Fee Sought by Plaintiff Is Warranted ............................................20

VIII. CONCLUSION.........................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aichele v. City of Los Angeles*,
  (C.D. Cal., Sept. 9, 2015, No. CV1210863DMGFFMX) 2015 WL 5286028 ..........15

*Campbell v. City of Los Angeles*,
  (9th Cir. 2018) 903 F.3d 1090 ...............................................................................6, 7

*Cortez v. Purolator Air Filtration Products Co.*,
  (2000) 23 Cal.4th 163 ................................................................................................4

*Cullen v. Whitman Medical Corp.* (E.D. Pa. 2000)
  197 F.R.D. 136, 146 ..............................................................................................18

*Ferra v. Loews Hollywood Hotel, LLC*,
  (2021) 11 Cal.5th 858 ..............................................................................................4

*Flores v. TFI International Inc.*,
  (N.D. Cal., Apr. 17, 2019, No. 12-CV-05790-JST) 2019 WL 1715180 ....................7

*Gaudin v. Saxon Mortg. Servs., Inc.*,
  No. 11-cv-01663, 2015 WL 7454183 (N.D. Cal. Nov. 23, 2015) ............................9

*Genesis Healthcare Corp. v. Symczyk*,
  (2013) 569 U.S. 66.....................................................................................................6

*Glass v. UBS Financial Services, Inc.*,
  2007 WL 221862 (N.D. Cal. 2007) ................................................................17, 20

*Hensley v. Echerhart*,
  461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).............................................17

*Hoffmann-La Roche Inc. v. Sperling*,
  (1989) 493 U.S. 165.................................................................................................6

*In re Corel Corp. Inc. Securities Litigation* (E.D. Pa. 2003) 293 F.Supp.2d 484, 488
  293 F.Supp.2d .......................................................................................................18

*In re Crazy Eddie Securities Litigation* (E.D.N.Y. 1993)
  824 F.Supp. ...........................................................................................................17

*In re Enron Corp. Securities, Derivative & ERISA Litigation*,
  586 F. Supp. 2d 732 (S.D.Tex. 2008) ...................................................................15

*In re Gen. Instruments Sec. Litig.*,
  209 F.Supp.2d 423 (E.D.Pa.2001) .......................................................................17

*In re Heritage Bond Litigation*,
  (C.D. Cal., June 10, 2005, No. 02-ML-1475 DT) 2005 WL 1594403 ..........15, 17, 18

*Leuthold v. Destination America, Inc.*,
  (N.D. Cal. 2004) 224 F.R.D. 462...........................................................................7

*Lynn's Food Stores, Inc. v. United States*,
  679 F.3d 1350 (11th Cir. 1982) .............................................................................8

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C.Cir.1993) ...................................................................................16

*Van Vranken v. Atlantic Richfield Co.,*
  (N.D. Cal. 1995) 901 F.Supp. 294 ...............................................................20
*Vizcaino*
*Vizcaino v. Microsoft Corp.* (9th Cir. 2002)
  290 F.3d 1043 ...........................................................................................16
*Zorrilla v. Carlson Restaurants Inc.* (S.D.N.Y., Apr. 9, 2018, No. 14 CIV 2740
  (AT)),
  2018 WL 1737139 .......................................................................................8

## Statutes

29 U.S.C. § 201 ................................................................................................1
29 U.S.C. § 206 ................................................................................................2
29 U.S.C. § 216(b) ....................................................................................4, 6, 7
Bus. & Prof. Code, § 17200 ..........................................................................3, 4
Lab. Code, § 203 ...........................................................................................3, 5
Lab. Code, § 226 ..............................................................................................5
Lab. Code, § 226,(a) .........................................................................................3
Lab. Code, § 226.7 ...........................................................................................2
Lab. Code, § 510,(a) .........................................................................................4
Lab. Code, § 1194 ............................................................................................2

## Rules

Fed. Rules Civ.Proc., rule 23, 28 ....................................................................11

## Regulations

29 C.F.R. § 778.107 ..........................................................................................3
29 C.F.R. § 778.109 ..........................................................................................3

## Other Authorities

7B Fed. Prac. & Proc. Civ. § 1807 ...................................................................7
2005 WL at p. at *19 ......................................................................................18
2015 WL at p. at *5 ..................................................................................17, 19
2015 WL at p. at *6 ........................................................................................17
2019 WL at p. at *6 ..........................................................................................8
*Common Funds and Common Problems: Fee Objections and Class Counsel's
  Response,* 17 RevLitig 525 (1998) ...............................................................16

Empirical Study of Class Actions in Four Federal District Courts: Final Report to the
Advisory Committee on Civil Rules...........................................................................18

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Ia Brown's motion seeks preliminary approval of a nationwide wage and hour class and collective action of overtime and related claims premised on violations of the federal Fair Labor Standards Act ("FLSA," 29 U.S.C. § 201 et seq.), the California Labor Code, and the California Unfair Competition Law, on behalf of a class of approximately 1386 persons, including 995 who worked outside of the State of California and 391 who worked in the State of California. The settlement is an excellent result for the Plaintiff and Plaintiff classes. It provides for the non-payment of $1.8 million, plus a separate payment of the employer's share of payroll taxes for the wage portion of the settlement payment. Moreover, after this case was filed, Defendants changed their pay practices for current employees, which has resulted in a substantial portion of the relief Plaintiff sought on behalf of the absent class members. Plaintiff respectfully requests that this Court enter the accompanying Proposed Order granting preliminary approval of the Settlement.

Before filing this motion, counsel engaged in a pre-filing conference pursuant to LR 7-3 on multiple occasions, including, but not limited to April 23, 2024.

## II.    CLASS DEFINITIONS

The Settlement is on behalf of (1) a nationwide collective class for claims arising under the FLSA, but which excludes Defendants' affected workers in California and (2) a California class, which has two subclasses. These classes are defined as follows:

a.    **FLSA Regular Rate Class**: All non-exempt hourly paid employees, including but not limited to Hearing Aid Dispensers and Hearing Aid Specialists, employed by the Business Entity Defendants[1] who also

---

[1] The phrase "Business Entity Defendants means Audiology Distribution, LLC; HearX West LLC; HearX West, Inc.; Sivantos, Inc.; and/or WS Audiology (California). (Agreement, ¶ 3.)

received commissions and/or bonuses at any time between June 22, 2019 and the date on which Preliminary Approval is granted;

b. **California Regular Rate Class**: All nonexempt hourly paid employees, including but not limited to Hearing Aid Dispensers and Hearing Aid Specialists, employed by the Business Entity Defendants, who also received commissions and/or bonuses at any time between December 26, 2017 and the date on which Preliminary Approval is granted;

c. **California Itemized Wage Statement Subclass**: All California Regular Rate Class Members who were employed at any time during the period of commencing December 26, 2020 and the date on which Preliminary Approval is granted; and

d. **California Waiting Time Penalties Subclass**: All California Regular Rate Class Members who were employed at any time during the period between December 26, 2018 and the date on which Preliminary Approval is granted.

As noted above, the FLSA Regular Rate Class is comprised of 995 persons who worked outside of the State of California. The California Regular Rate Class is comprised of 391 persons. The California Itemized Wage Statement Subclass has 363 members, and the California Waiting Time Penalties Subclass as 160 members. There is no difference between the proposed Settlement Classes and the proposed Classes in the operative complaint.

## III.   CASE SUMMARY

Plaintiff's Complaint contains seven causes of action. They are as follows:

1) Failure to Pay Overtime Wages (29 U.S.C. § 206 *et seq*.);

2) *Individual* Claim for Failure to Pay Minimum Wages (Lab. Code, § 1194);

3) Failure to Pay Overtime Wages (Lab. Code, § 1194)

4) *Individual* Claim for Failure to Provide Meal/Rest Breaks (Lab. Code, § 226.7);

5) Failure to Provide Accurate Wage Statements (Lab. Code, § 226,(a));

6) Failure to Timely Pay All Wages Due and Owing (Lab. Code, § 203); and,

7) Unfair Business Practices (Bus. & Prof. Code, § 17200 *et seq*.)

Plaintiff did not advance a minimum wage claim for off the clock work or meal and rest break claims on behalf of putative class members, as Plaintiff did not observe other employees working off the clock or being denied meal and rest breaks. No evidence was ever adduced to support such a claim for anyone other than Plaintiff herself, notwithstanding Plaintiff's investigation, in which Plaintiff's Counsel interviewed numerous former employees of the Defendants. Thus, only five causes of action were advanced on behalf of putative class members and valued for purposes of settlement. Plaintiff is unaware of any related cases that will be affected by this proposed Settlement.

### A. First Cause of Action - Overtime Wages outside California (FLSA)

Both federal and California law require that the payment of overtime wages be calculated based upon an employee's regular rate. Instead of using the regular rate, these Defendants computed overtime payments based upon their employees' hourly rate alone, and they did not include the hourly value of nondiscretionary commission payments, that comprise a substantial portion of the Plaintiff's and the plaintiff classes' income. 29 C.F.R. § 778.107 states that, "The general overtime pay standard in section 7(a) [of the FLSA] requires that overtime must be compensated at a rate not less than one and one-half times the regular rate at which the employee is actually employed." Id. 29 C.F.R. § 778.109 explains that, "The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." Id. Defendants provided Plaintiff's Counsel with substantial amounts of data from which both sides made computations regarding the actual amount of unpaid overtime, due to the Defendants' obvious failure to include commissions paid to employees when

- 3 -

calculating their regular rate of pay for overtime. Utilizing the data provided by Defendants, which is being verified under oath by Defendants in connection with this motion (*See* Waldorf and Williams Declarations), Plaintiff calculated Defendants' exposure for overtime in states outside of California for 995 persons based upon a three-year statute of limitations for willful violations[2] to be approximately $291,000, with liquidated damages in an equal amount pursuant to 29 U.S.C. § 216(b), for a total exposure, assuming 100% participation, in the amount of $582,000. However, Plaintiff does not expect 100% participation. The proposed Claims Administrator, CPT Group, Inc., has projected a 30% participation rate based upon their decades of experience in processing claims such as these. Accordingly, the realistic exposure Defendants faced was more like $174,600.  (Cullen Decl. at ¶ 20-26.)

### B.    Third Cause of Action - Overtime Wages inside California

As stated, California law mirrors federal law in this regard. Lab. Code, § 510,(a) requires that employers compensate employees by a multiple of that employee's "regular rate of pay," which encompasses all known discretionary payments, not just hourly wages.  *Ferra v. Loews Hollywood Hotel, LLC* (2021) 11 Cal.5th 858, 862. For the 391 persons comprising the California Regular Rate Class, utilizing Defendants' data and a four-year statute of limitations, Plaintiff calculated Defendants' exposure at approximately $70,256.00. The reason Plaintiff used a four-year statute of limitations instead of the standard three-year statute of limitations applicable to statutory violations, e.g., nonpayment of overtime wages, is that Plaintiff also pled a cause of action for Unfair Business Practices, pursuant to Bus. & Prof. Code, § 17200, which extended to 4 years the statute of limitations on statutory claims, such as a claim for nonpayment of overtime wages.  *See e.g. Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163.  (Cullen Decl. at ¶ 28-30.)

---

[2] The typical statute of limitations for FLSA claims is 2 years, but in the case of willful violations, it may be extended to 3 years.

### C.     Fifth Cause of Action - Wage Statement Violations

Plaintiff contended that for the 363 members of the California Waiting Time Penalties Subclass, assuming a maximum violation rate and the maximum payout available, which is capped by Lab. Code, § 226 at $4,000, the exposure Defendants had was arguably $1,180,000. However, based upon Counsel's investigation and the relatively low amount of overtime at issue for California overtime wages, Plaintiff believed that obtaining the statutory maximum of $4000 per person was highly unlikely, and that the violation rate was probably closer to 25%, thus quartering the exposure to the approximately $295,000. (Cullen Decl. at ¶ 30-33.)

### D.     Sixth Cause of Action - Waiting Time Penalties

Lab. Code, § 203 allows an employee who has not been paid all wages due and owing at the time the termination of employment, to be paid his or her daily wage for up to 30 days as a penalty for a willful violation of the laws requiring payment of wages. Plaintiff contended that, since the regular rate violation would almost undoubtedly qualify as a willful violation of law, for the 160 members of the California Waiting Time Penalties Class, whose correct regular rate Plaintiff calculated at $29.55 per hour, they would be entitled to approximately $1,135,000. Given the relatively indisputable nature of the foundational wage claims, Plaintiff did not discount this amount when projecting collectible damages. (Cullen Decl. at ¶ 34-36.)

### E.     Seventh Cause of Action – Unfair Business Practices

As for the 7th cause of action for unfair business practices, this cause of action was not segregated out when analyzing the underlying wage claims. Instead, plaintiff simply used the extent statute of limitations for nonpayment of overtime wages under California law and did not therefore ascribe any value to this claim, independent of the claims to which it was attached. (Cullen Decl. at ¶ 37.)

**F.    Summary of Exposure in Comparison to Settlement Amount**

Adding up the foregoing amounts, $174,600 for FLSA claims outside of California (assuming 30% claims rate), $70,256 for unpaid overtime inside California, $295,000 for wage statement violations (assuming a 25% violation rate), and $1,135,000 for waiting time violations (assuming a 100% violation rate), the **Defendants' damages and penalties exposure was $1,674,856 plus prejudgment interest in the amount of approximately $152,920 or a total of $1,827,776.** Prejudgment interest was calculated on the wage claims only, not including the liquidated damages portion of the FLSA claims, since the liquidated damages is an alternative to interest under the law and would pay participating selective class members better than interest would. The total of the wage claims against which interest was calculated was approximately $382,300. Interest was calculated at 10% for approximately 4 years, yielding $152,920. Thus, for a total exposure of $2,343,158, not including attorney's fees. The proposed Total Settlement Amount of $1.8 million is 102% of the projected damages Plaintiff anticipated collecting. This is an outstanding outcome for the class. (Cullen Decl. ¶ 38-42.)

## IV.    SETTLEMENT TERMS AND EVALUATION

Before providing additional analysis regarding why the Court should find that the proposed settlement is fair, adequate and reasonable and treats class members equitably relative to one another, given the costs, risks and probability of success if the litigation continued, it is worth noting the differences between the claims advanced on behalf of (A) the California class and subclasses and (B) the FLSA collective class for workers outside of California. The claims for these two groups are governed by different procedural and substantive laws that must be taken into consideration not only when litigating their claims, but also when settling them. "Rule 23 actions are fundamentally different from collective actions under the FLSA." *Genesis Healthcare Corp. v. Symczyk* (2013) 569 U.S. 66, 74 (citing *Hoffmann-La Roche Inc. v. Sperling* (1989) 493 U.S. 165, 177–78). In *Campbell v. City of Los*

*Angeles* (9th Cir. 2018) 903 F.3d 1090 (Berzon, J.), the Ninth Circuit set out the significant differences between Rule 23 class actions and 29 U.S.C. § 216(b) collective actions. *See id.* at p. 1101. The court noted that "[c]ollective actions and class actions are creatures of distinct texts—collective actions of section 216(b), and class actions of Rule 23—that impose distinct requirements. *See* 7B Fed. Prac. & Proc. Civ. § 1807 (citing examples of cases so observing)." *Ibid.*

Here, the Court should conditionally certify the Rule 23 Class, i.e., the California Regular Rate Class and two California subclasses for purposes of settlement, as these classes meet the criteria set forth in Rule 23. As for those who worked outside of California, who comprise the FLSA Regular Rate Class, the Court should also approve that portion of the settlement. In a FLSA § 216(b) collective action, workers may join the action by filing forms with the court or submitting a claim, and they can participate regardless of whether the Court has decided that a court-approved notice should be sent to the workers after a conditional or preliminary certification motion. *Campbell*, *supra*, 903 F.3d at p. 1101–02, 1104. Unlike a Rule 23 class, preliminary certification in a FLSA collective action does not "produce a class with an independent legal status[ ] or join additional parties to the action." *Id.* at p. 1101. The term "certification" is used in both kinds of cases, but there are no "particular procedural parallels between collective and class actions." *Id.* at p. 1102.

The lack of procedural parallels between Rule 23 classes and FLSA collective actions can affect settlement procedures as well. The FLSA has no statutory requirement that the Court review the settlement for fairness, reasonableness, and adequacy, because, unless a class member opts in to the action that member is not bound by the settlement. *Flores v. TFI International Inc.* (N.D. Cal., Apr. 17, 2019, No. 12-CV-05790-JST) 2019 WL 1715180, at *6 (Tigar, J.) (noting that the Ninth Circuit has not established criteria that a district court must consider in determining whether a collective action settlement under the FLSA warrants approval). A FLSA Regular Rate Class Member here, i.e., one who worked outside of California and who

- 7 -

does not opt into the settlement, may bring an FLSA claim at any time in the future, so long as it is not barred by the statute of limitations.  *See Leuthold v. Destination America, Inc.* (N.D. Cal. 2004) 224 F.R.D. 462, 469–70 (Walker, J., "the FLSA suit provides a means of participation for individuals who truly wish to join the suit, while requiring no action from those who do not wish to join."). This Court's only obligation in evaluating the FLSA settlement is to determine if the Settlement constitutes "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Flores*, *supra*, 2019 WL at p. at *6 (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.3d 1350, 1352-53, 1355 (11th Cir. 1982)). And, while the Court may entertain objections by an FLSA collective class member, it is not required to do so.  *See e.g., Zorrilla v. Carlson Restaurants Inc.* (S.D.N.Y., Apr. 9, 2018, No. 14 CIV. 2740 (AT)) 2018 WL 1737139, at *2 (finally approving settlement in which FLSA collective members not provided right to object).

The Settlement here is a fair, adequate and reasonable compromise when one considers it in light of substantial amount pledged by Defendants to address the claims advanced by Plaintiff. As discussed, when evaluating the Defendants' exposure, Plaintiff concluded that Defendant was offering 102% of the projected value of the case, and that is before adding attorney's fees and costs. On its face, that is an absolutely outstanding outcome. In terms of how the Settlement treats participating class members relative to one another, it is designed to ensure that everyone who participates is paid at least $25, and that the balance of their claims are paid out in accordance with the individual liability exposure that Defendants faced with respect to each individual, based on actual data derived from Defendants' payroll records.  In other words, individual recoveries will be proportionate, comparing Defendants' potential liability with respect to each individual as compared to potential liability Defendants faced with respect to the Class and/or Subclass as a whole. Specifically, Defendants' internal payroll data is being utilized to determine precisely how much participating class members on an individual basis (A) were short paid because they

- 8 -

did not receive overtime pay based upon the regular rate (B) the maximum penalty that could have been assessed by the Court had it found violations for every California wage statement in which the employee was paid overtime computed at a rate other than the regular rate, and (C) the dollar value of the California waiting time penalties to which the participating class member would have been entitled had such penalties been awarded by the Court. After determining the foregoing, the Defendants' exposure for an individual's claim is compared to the Defendants' exposure to all of the class' claims, and that percentage will be multiplied against the balance of the net settlement fund, i.e., what is left after standard deductions for attorney's fees, costs, class representative service fee, and claims administration *plus* a deduction for the $25 to be paid to each participating class member. The portion of the Settlement Agreement that explains the procedure for computation is set forth in ¶ 22.

This method of analysis allows settlement payments to account for substantial differences that exist between individual class members, some who worked very little overtime and made very few sales and some who worked copious amounts of overtime and made substantial sales revenues. While each participant will be provided at least $25, those who worked the longest and made the most sales and thus, by all rights, should have been paid the most -- those participants will be rewarded in this Settlement for their hard work. Distribution plan that compensates class members based on the type and extent of their individual injuries is generally considered reasonable. *Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663, 2015 WL 7454183 (N.D. Cal. Nov. 23, 2015).

As for other assorted details regarding the Settlement and questions that the Court may wish to consider, Plaintiff addresses them here.

- Is injunctive relief sought? No, that is not a component of this Settlement.
- What will be the amounts and manner of distribution of payments to participating class members? Settlement payments will be distributed by the Claims Administrator by way of first-class mail. While the average settlement amount may

- 9 -

not be particularly illuminating, considering the vast differences between California and federal law, it may give the Court some sense of the value of individual claims. The highest amount payable to a participating class member will only be known after claims administration is underway, but the lowest payout will assuredly be $25. As for an average payout, assuming all standard deductions are awarded as requested, the calculations would generally be as follows:  $1.8 million in gross settlement, minus 1/3 for fees (i.e., minus $600,000), minus $10,000 for advanced costs, minus up to $25,000 for claims administration, and minus $20,000 for the class representative service award, results in a Net Settlement Amount of $1,145,000.00.  Assuming 100% participation, which is highly unlikely, $34,650 will be distributed to class members so that each will receive $25. Thereafter the remainder of the settlement fund will be divided on a pro rata basis, as described above. Inclusive of the $25 that would be distributable to each participating class member, assuming a 100% participation rate, each participating class member would be awarded on average $826.12.

- Will there be a reversion? No. This is a non-reversionary settlement.  Any funds from uncashed checks after 365 days will be sent to the Comptroller of the State of California and the name of the California class member and held under the Unclaimed Property Law.

- What is the scope of the releases?  Plaintiff is making a full release with a Section 1542 waiver of unknown claims. (*See* Agreement at ¶ 29.) In contrast, the participating class members' release is limited to wage and hour claims that are or could have been advanced on their behalf based upon the wage and hour allegations in the complaint.  It does not purport to release unrelated claims, such as claims of discrimination or wrongful termination. (*See* Agreement at ¶ 12.)

- How will payments be treated for purposes of taxes? 18% of individual payments will be allocated to wages, for which a W-2 shall be issued. The balance of the payment will be subject to a 1099. This allocation is consistent with the data

regarding what portion of Defendants' exposure is attributable to actual wage claims versus penalty claims.

- Are there affirmative obligations imposed upon class members or class counsel? Yes, after the filing of this motion, participating FLSA collective class members must affirmatively opt into the settlement. The parties are obligated to cooperate in implementing the terms of the proposed Settlement. (*See* Agreement at ¶ 45.) Prior to the filing of the motion, the Parties are to maintain the negotiations that led up to the Settlement and the Settlement itself as confidential. (*See* Agreement at ¶ 33.)

- Does the settlement require submission of a claim? It only requires FLSA collective class members opt in, which is akin to submitting a claim. The opt in requirement is statutorily required by the FLSA, as described above; however, participating Class Members are not obligated to furnish any information in order to obtain a recovery other than information sufficient to confirm their identity. In contrast, California class and subclass members will not need to submit a claim to participate. They only need not opt out.

- Is this a coupon settlement? No.

- Is there is Cy Pres beneficiary? No. This is a non-reversionary settlement, and all monies, other than those allocated for standard deductions, will be distributed to participating class members according to the formula described above.

- What will be the form of Notice to class members?   The proposed Class Notice, which is attached as Exhibit A to the Settlement Agreement, in conformity the requirements of Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(c)(2)(B).

  - It sets forth the material terms of the settlement and the scope of the proposed release in detail. (*See* Sections III and IV.)

  - It includes a definition of the class to be certified. (*See* Section I.)

  - It generally explains the class claims, issues, and defenses. (*See* Section II.)

- 11 -

- o It notes that a class member may enter an appearance through an attorney if the member so desires. (*See* Section VIII.)

- o It explains that a member may wish to exclude him or herself from the settlement and how to do so. (*See* Section VII.)

- o It also explains that if one does not opt as a California Class or Subclass member, that one will be bound by the terms of the Settlement.  (*See* Section VII.)

- o It provides class members contact information for class counsel so that they can readily pose any questions they may have about the Settlement. (*See* Section VIII, fourth paragraph.)

- o It provides the address for a website that will be maintained by the claims administrator that will list key deadlines and will have links to the notice, preliminary approval order, motions for preliminary and final approval and for attorneys' fees. (*See* Section X, second paragraph.)

- o It has instructions on how to access the case docket via PACER or in person at any of the court's locations. (*See* Section III, first paragraph.)

- o The date, time, and location of the final approval hearing are set forth at Section IX, and class members are clearly advised that the date may change without further notice. They are also advised how to determine if the date has changed.

This Notice plan is expected to be the most efficient means of contacting this class, because Defendants, as the current and/or former employer of the employee Class, has ready access to the addresses of the vast majority, if not all of the putative class members (of course, assuming they have not moved). If Class Members have moved, that eventuality is accounted for by having the Claims Administrator confirm the accuracy of addresses retained by Defendants through the National Change of Address registry prior to dissemination of the Class Notice.

## V.    CLAIMS ADMINISTRATION

The parties have proposed utilizing CPT Group, Inc. as the Claims Administrator, and they have allotted as much as $25,000 in the Settlement for claims administration for this class of approximately 1,386 persons, even though CPT Group, Inc.'s bid is capped at $17,500. (*See* Settlement at ¶ 27 and CPT Group's May 16, 2024 bid, **EXHIBIT 2** to Cullen Decl.) Plaintiff's counsel solicited bids from three well-known, reputable claims administrators, including CPT Group, Inc. The others were ILYM Group, Inc., which provided a bid estimating costs of administration at $18,750, and Phoenix Class Action Administration Solutions, which provided a bid not to exceed $26,000.  (Cullen Decl. at ¶ 60.) In light of the fact that this is an employee class, each of the administrators proposed notice by way of first class mail. Plaintiff's counsel has utilized CPT Group, Inc. as a claims administrator in less than 10 of the dozens of class cases he has handled over the past 25 years, but only once in the past two years, and he has never had any problems with the claims administration services provided by CPT Group, Inc.  (Cullen Decl. at ¶ 62.) In the accompanying declaration of Julie Green, Senior VP of Operations at CPT Group, Inc., she confirms that CPT Group, Inc. (a) has appropriate procedures in place for securely handling class member data, (b) maintains insurance for errors and omissions, (c) anticipates administrative costs will not be charged in excess of $17,500, (d) deems these costs reasonable in relationship to the $1.8 million Settlement, and (e) will be paid by Defendants to the funding of the Settlement. (*See* Green Decl. *passim.*)

## VI.    TYPICALITY, COMMONALITY AND ADEQUACY OF REPRESENTATION

### A.    Plaintiff is an Adequate Class Representative

Plaintiff and proposed class representative, Ia Brown, has claims that are typical of the putative class. Her declaration, filed concurrently herewith, readily establishes that she worked for the Defendants, and that when she was paid overtime, she was not paid overtime based upon her regular rate. Instead, she was paid overtime based on a

multiplier (e.g., 1.5) of her hourly wage rate, even though she earned substantial commissions. (*See* Brown Decl. at ¶ 5-10.) Accordingly, she was not paid all of her premium overtime wages under both federal and state law. As a result she was not paid all wages due and owing at the time of the termination of her employment in 2021. (Id.) This computational error appeared in Plaintiff's wage statements; thus, her wage statements did not show either the gross or net wages earned.  (*See* Cullen Decl. ¶ 67 and **EXHIBIT 3**.) Given the nature of such a computational error, it is exceedingly unlikely that Plaintiff was alone in her experience. Payroll procedures typically are uniform throughout individual business entities, and this case was no exception. Plaintiff's investigation also revealed that Plaintiff's coworkers were subjected to the same practice. As such Plaintiff can demonstrate commonality for purposes of certification. (*See* Cullen Decl. at ¶ 72.) Plaintiff demonstrates in her declaration that her claims are typical of those that are asserted on behalf of the Classes and Subclasses in this Settlement. The California Regular Rate Class is simply a subset of the FLSA Regular Rate Class, and because Plaintiff was subjected to violations of the FLSA, and the FLSA is federal, Plaintiff may act as a class representative for class members who worked both inside and outside California. As for her membership in the California Itemized Wage Statement Subclass, she had wage statements that clearly did not comport with California law. (Id. at ¶ 75.) Finally, as she was not paid proper premium overtime pay throughout the time she worked for the Defendants, she was not paid all the wages she was due at when she left employment with the Defendants in 2021; thus, she is a member of the California Waiting Time Penalties Subclass.

Plaintiff's declaration confirms that she is an adequate representative, not just because she has claims that are common and typical of those advanced on behalf of the Classes and Subclasses, but also because she has no interests that are antagonistic to absent class members. (Brown Decl. at ¶ 22.) She also is cognizant of and has fulfilled her fiduciary duties to absent class members. (Id at ¶ 21, 24-27.)

### B.     Plaintiff's Counsel is Adequate Class Counsel

Plaintiff's Counsel has over 25 years of experience in prosecuting class actions, and he has been certified as class counsel in dozens of cases, several of which certified in contested hearings. (See Cullen Decl. at ¶ 79-96.) As such, he was able to assess the propriety of the proposed Settlement herein, and it is his skill and experience that ensured that this case was properly prosecuted from the outset, yielding an exceptional result for the Classes and Subclasses. (Id at ¶ 97.) He has no conflicts with the Classes or Subclasses. (Id at ¶ 84.) Moreover, he is not a relative of the Plaintiff, and he has no financial interest in the proposed Claims Administrator. (Id at ¶ 85.)

## VII.    COSTS AND FEES

### A.     Plaintiff's Litigation Costs Should be Reimbursed

Plaintiff's costs in this case have been relatively modest. To date they are approximately $6,409, the largest component of which is the mediator's fee of $5000. (Id at ¶ 100-102.) The incredibly modest costs incurred in this case are because this case did not undergo contentious litigation. Instead, the case presents what Plaintiff considered to be one of clear liability, and Defendants were quick to try to resolve the case and correct their payroll errors. They and their counsel were transparent in their dealings with Plaintiff's Counsel, and they sought proactively to promptly resolve this matter after its filing.  Nevertheless, there were costs that were incurred and they were necessarily incurred in the furtherance of the objectives of this litigation, and Defendant has agreed to reimburse Class Counsel for expenses incurred up to $10,000. Such an award is typical and entirely appropriate.

### B.     The Fees Sought by Plaintiff's Counsel Are Reasonable

#### 1.     The Percentage of the Fund Method Supports the Fee Request

Plaintiff's Counsel seeks one third of the Settlement fund as fees, i.e., $600,000. "It is well settled in the Ninth Circuit that: "In a common fund case, the district court has discretion to apply either the loadstar method or the percentage-of-the-fund method in calculating a fee award. [Citation.]" *In re Heritage Bond Litigation* (C.D.

Cal., June 10, 2005, No. 02-ML-1475 DT) 2005 WL 1594403, at *18. This Court has previously concluded that awarding fees based on a percentage of a common fund is both typical and appropriate in cases like this. For example, in *Aichele v. City of Los Angeles*, this Court observed, "While most circuits leave the method used to the discretion of the trial court, '[m]ost federal courts use the percentage of the fund approach in awarding attorneys' fees in common fund classes.' [Citing] *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 586 F. Supp. 2d 732, 748 (S.D.Tex. 2008)." *Aichele v. City of Los Angeles* (C.D. Cal., Sept. 9, 2015, No. CV1210863DMGFFMX) 2015 WL 5286028, at *4. Expanding on that subject, this Court stated as follows:

> Many courts and commentators have recognized that the percentage of the available fund analysis is the preferred approach in class action fee requests because it more closely aligns the interests of the counsel and the class, i.e., class counsel directly benefit from increasing the size of the class fund and working in the most efficient manner. *See, e.g., Vizcaino*, 290 F.3d at 1050 ("lodestar method is merely a cross-check on the reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement."); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1266-67 & n.3, 1271 (D.C.Cir.1993) (noting that the lodestar approach "encourages significant elements of inefficiency" by giving attorneys an "incentive to spend as many hours as possible" and "a strong incentive against early settlement"; the percentage approach "more accurately reflects the economics of litigation practice"; "the monetary amount of the victory is often the true measure of success, and therefore it is most efficient that it influence the fee award";

accordingly, "we join the Third Circuit Task Force and the Eleventh Circuit, among others, in concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases"); Silber and Goodrich, *Common Funds and Common Problems: Fee Objections and Class Counsel's Response*, 17 RevLitig 525, 534 (1998) (the percentage approach avoids numerous drawbacks of the lodestar approach and is preferable because "the attorneys will receive the best fee when the attorneys obtain the best recovery for the class. Hence, under the percentage approach, the class members and the class counsel have the same interest—maximizing the recovery of the class.").

*Aichele*, *supra*, 2015 WL at p. at *5. The court went on to note that,

> "A lodestar cross-check is not required in this circuit and, in a case such as this, may not be a useful reference point. *See, e.g., Glass v. UBS Financial Services, Inc*., 2007 WL 221862, 16 (N.D. Cal. 2007) (no lodestar cross-check required where an early settlement resulted in exceptional results for the class even though some class members and the New York attorney general objected to the 25% of the fund request as excessive).

*Aichele*, *supra*, 2015 WL at p. at *6.

## 2.    Results Obtained Strongly Support the Fee Request

Here, the exceptional results obtained through early settlement warrant an award of one third of the Settlement fund for attorney's fees. That is so, because "[t]he result achieved is a significant factor to be considered in making a fee award. [Citing] *Hensley v. Echerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (holding that the 'most critical factor is the degree of success obtained')." *In re Heritage Bond Litigation* (C.D. Cal., June 10, 2005, No. 02-ML-1475 DT) 2005 WL 1594403, at *19. In the *Heritage Bond Litigation* matter, Judge Tevrizian found that

the recovery by the plaintiff's attorneys of approximately 36% of the class' total net
loss represented an exceptional result,

> and is greater than those obtained in cases where class counsel was
> awarded one-third of a common fund. *See Med. X–Ray* 1998
> WL661515, at *7–*8 (increasing 25% benchmark to 33.3% where
> counsel recovered 17% of damages); *Crazy Eddie,* 824 F.Supp. at 326
> (increasing 25% benchmark to 33.8% where counsel recovered 10%
> of damages); *In re Gen. Instruments Sec. Litig.,* 209 F.Supp.2d 423,
> 431, 434 (E.D.Pa.2001) (awarding one-third fee from $48 million
> settlement fund that was approximately 11% of the plaintiffs'
> estimated damages); *Corel,* 293 F.Supp.2d at 489–90, 498 (permitting
> one-third fee award from $48 million settlement fund which
> represented approximately 15% of class' total net damages); *Cullen,*
> 197 F.R.D. at 148 (awarding one-third in fees from settlement of class
> consisting of defrauded vocational students that was 17% of the
> tuition that class members paid).

*In re Heritage Bond Litigation*, *supra*, 2005 WL at p. at *19.

Here, by way of this Settlement, Plaintiff will have recovered approximately
102% of the damages and penalties that she and her counsel reasonably anticipated
they would be able to obtain by way of a successful judgment, not accounting for fees
and costs. This result is not just a little bit better than those cases where Class Counsel
have been awarded one third of a common fund as fees, it is better by a factor of at
least two (2) and even more than five (5). Plaintiff submits that this factor alone
justifies the award of fees at one-third of the $1.8 million common fund.

### 3.    Additional Factors Support the Fee Award

**Risk:**  There is no doubt that class actions are inherently risky.
In a Federal Judicial Center 1996 report, titled "Empirical Study of
Class Actions in Four Federal District Courts: Final Report to the

- 18 -

Advisory Committee on Civil Rules" ("FJC Report"), the Report authors studied the outcomes of four federal districts and concluded that 31.7% or less of the filed class cases resulted in successful class outcomes for Plaintiffs. This does not account for the degree of success (i.e., some cases could have resulted in minimal or partial success, and they would still be in the successful claim category). Thus, an outcome such as that obtained in this case is the exception, not the rule. The FJC Report also examined the awarded fees and concluded that "attorneys' fees were generally in the traditional range of approximately one-third of the total settlement."

*Aichele*, *supra*, 2015 WL at p. at *5

**Efficiency, Experience, and Skill of Counsel:**  This case resulted in early settlement and was not the subject of contentious litigation, due to careful observation and investigation by experienced class counsel. The case was litigated on a contingent fee basis and the Settlement is the result of arm's-length negotiations, overseen by a nationally renowned mediator, Hunter Hughes, and entered into only after Plaintiff had obtained sufficient information by way of discovery and investigation to reasonably evaluate the case for settlement purposes. Plaintiffs' counsel has been litigating class actions in Los Angeles since 1998 and has successfully obtained verdicts and settlements in cases exceeding $75 million, predominantly as a sole practitioner.

**Efforts Expended by Counsel:**  As set forth in his Declaration, Plaintiffs' counsel has worked on this case for approximately two years, during which he performed an investigation involving direct communication with multiple class members and with Ms. Brown. He prepared a Rule 26 conference report, analyzed documents from various sources, including documents that are publicly available, regarding the Defendants and their operations. He prepared a mediation brief and engaged in a half-day mediation after multiple days of direct negotiations with

- 19 -

Defense counsel.  Plaintiff's Counsel has taken the lead role in preparing the settlement documents that have been executed by the parties.  Even after the initial draft of the settlement documents were prepared, the terms were subject to ongoing negotiations for nearly 12 weeks. During that time, Plaintiffs' counsel also effectively persuaded Defendants to increase the proposed settlement amount from $1.6 million to $1.8 million, based upon the triggering of an escalator clause he ensured to put in the Memorandum of Understanding executed on March 11, 2024, which constituted the framework for the long-form settlement agreement that is before the Court. Plaintiff's counsel will continue to be occupied with a multitude of tasks related to the resolution of this case, including, but not limited to preparing a motion for final approval, working with the Claims Administrator, and working with Plaintiff and absent class members as needed.

### C.   Service Fee Sought by Plaintiff Is Warranted

Plaintiff seeks $20,000 as a Service Fee, which is barely over 1% of the Total Settlement Amount, an amount that will scarcely be noticed by any absent class member who may participate in this lawsuit she prosecuted on their behalf. She very much deserves this fee for having successfully obtained an outstanding Settlement -- one that not only yielded monetary results, but also one that changed the Defendants' practices.  Plaintiff attests to having spent over 20 hours working on this case with her counsel. (Brown Decl. at ¶ 26.) In her declaration, she also provides details of her efforts, including that she provided and explained work-related records to her attorneys, identified potential witnesses and facilitated her Counsel's investigation, and much more. (Brown Decl. at ¶ 12, 23-27.) She understood and has abided by her fiduciary duties to class members. (Brown Decl. at ¶ 15, 20-23.) While Plaintiff understands that the award to her is discretionary, she has contributed directly to the successful outcome of this case in multiple ways, including providing information, filing a declaration, making herself available to be deposed and exposing herself to the consequences of a potentially adverse judgment.

A $20,000 award is also consistent with class representative awards granted in this circuit. *See, e.g., Glass*, *supra*, 2007 WL at p. at *16 (approving payments of $25,000 to each named plaintiff) and *Van Vranken v. Atlantic Richfield Co.* (N.D. Cal. 1995) 901 F.Supp. 294, 299 (awarding $50,000 to a lead plaintiff). Of course, absent class members will have the opportunity to object to the proposed incentive award, but on a preliminary basis, this award is well within the range of acceptable incentive payments to class representatives for which this Court has the discretion to recognize the work Plaintiff performed on behalf of the class in this case and the risks she undertook in so doing.

Finally, Plaintiff is being asked to provide a complete release of all claims, and she brought individual claims for meal and rest break violations as well as unpaid minimum wages. While she did not prosecute these as class claims, because of the lack of evidence adduced in discovery regarding the same, these claims to have value, and support the $20,000 service award sought here.

## VIII. CONCLUSION

Considering the foregoing, Plaintiff respectfully requests that the Court grant the instant motion providing the relief set forth in the proposed order lodged concurrently herewith.

Dated:  June 12, 2024             **PAUL T. CULLEN**
                                  **THE CULLEN LAW FIRM, APC**


                                  By: /s/          *Paul T. Cullen*
                                             Paul T. Cullen

                                  Attorneys for PLAINTIFF IA BROWN

# CERTIFICATE OF SERVICE

I, Paul T. Cullen, certify and declare as follow:

     1.    I am over the age of 18 and not a party to this action.

     2.    My business address is 9800 Topanga Canyon Boulevard; Suite D, PMB 325; Chatsworth, CA 91311-4057.

     3.    On June 12, 2024, I caused a copy of **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT** to be served upon the following counsel via the Court's CM/ECF system:

> YURI MIKULKA  (State Bar No. 185926)
> MARTHA S. DOTY (State Bar No. 143287)
> LISA L. GARCIA (State Bar No. 301362)
>    Alston & Bird LLP
>    333 South Hope Street, 16th Floor
>    Los Angeles, CA 90071-1410
>    Telephone: (213) 576-1000
>    Facsimile:  (213) 576-1100
>    E-mail: yuri.mikulka@alston.com
>        martha.doty@alston.com
>        lisa.garcia@alston.com
>    Attorneys for DEFENDANTS AUDIOLOGY DISTRIBUTION, LLC;
>    HEARX WEST, INC.; and HEARX WEST LLC

I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct.  Executed on June 12, 2024 at Los Angeles, California.

        /s/   *Paul T. Cullen*
        Attorneys for Plaintiff IA BROWN